

George Bochetto†^  1524 Locust Street          * Admitted to the New Jersey Bar
Gavin P. Lentz*     Philadelphia, PA 19102     † Admitted to the New York Bar
Jeffrey W. Ogren*   215-735-3900               · Admitted to the the Virginia Bar
David P. Heim*      Fax: 215-735-2455          ^ Admitted to the D.C. Bar
Vincent van Laar*                              · Admitted to the Florida Bar
Bryan R. Lentz*     203 High Street
John A. O'Connell*  Mt. Holly, NJ 08060        PRACTICE DEDICATED
Kiersty DeGroote*·  856-722-9595               TO LITIGATION AND
Kean C. Maynard*    Fax: 856-722-5511          NEGOTIATION MATTERS
Matthew L. Minsky†*·
Ryan T. Kirk        bochettoandlentz.com

**George Bochetto**         Albert M. Belmont, III*
*Attorney at Law*           *of Counsel*
gbochetto@bochettoandlentz.com                  ***Please send all Mail to the Philadelphia Office***

September 24, 2024

**VIA CM/ECF**

The Honorable Joel H. Slomsky
United States District Judge for the
Eastern District of Pennsylvania
5614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

      Re:     <u>**Bologna v. Krasner,** *et al.*, **Civil Action No. 24-cv-3185**</u>

Dear Judge Slomsky:

      I write in response to Attorney Smith's letter, dated September 20, 2024. Plaintiffs oppose Mr. Smith's proposal that the Byrne's ethics opinion (the "Ethics Opinion") and Defendants' conflict waivers ("Waivers") be submitted to the Court for *in camera* review *only*.

      As set forth fully in Plaintiffs' Response in Opposition to Defendants' Motion for Extension of Time (*See* Docket No. 16), before the Court is a troubling issue regarding the inherent conflict of interest: Attorney Smith seeks to represent Defendants Tripp and Rocks as well as Krasner despite the fact that they each have defenses which are directly adverse to one another. This conflict is magnified by the fact that Krasner is a longtime client of Attorney Smith and has never represented either Tripp or Rocks in the past. This conflict may be non-waivable. *See* PA ST RPC Rule 1.7.

      On August 13, 2024, the Parties attended a teleconference during which the Court addressed the conflict of interest. The Court ordered that Defendants Tripp and Rocks each obtain an expert opinion from ethics counsel advising whether such conflict may be waived by informed consent. Your Honor further Ordered that following the submission of the expert opinion an evidentiary hearing would be held to evaluate the opinion and the validity of any proposed informed consent waivers. The Court's Order is consistent with this Court's precedent. *U.S. v. Luchko*, Criminal Action No. 06-319, at *6 (E.D. Pa. Nov. 9, 2006) (Upon Motion by the United

**BOCHETTO & LENTZ, P.C.**
The Honorable Joel H. Slomsky
September 24, 2024
Page **2** of **3**

States, a hearing was held to address possible conflicts of interest with defense counsel under Rule 1.7.) The upcoming hearing is crucial to determining if Defendants' proposed Waivers are legally valid. *U.S. v. Borgesi, Criminal Action No. 99-0363-07*, at *1 (E.D. Pa. Oct. 11, 2000) (The court rejected defendants informed consent waiver and disqualified counsel, finding there was an "unwaivable conflict.")[1]

     Plaintiffs have standing to review the Ethics Opinion and Waivers. The party seeking to disqualify opposing counsel bears the burden of showing that continued representation would be impermissible. *Inorganic Coatings, Inc. v. Falberg*, 926 F. Supp. 517, 518 (E.D. Pa. 1995). As such, Plaintiffs have standing to cross-examine Defendants and ethics counsel regarding the Ethics Opinion and Waivers that purport to resolve the conflict. If the Ethics Opinion is erroneous and the conflict cannot be waived, then any verdict the Plaintiffs obtained at trial would be reversable. *Com. v. Green*, 379 Pa. Super. 602, 604, 550 A.2d 1011, 1012 (1988) (the trial court's ruling affirmed ordering a new trial due to a violation of Rule 1.7.) Under the common representation doctrine, at trial each of the Co-Defendants would be precluded from providing complete and honest testimony vital to the prosecution of Plaintiffs' claims if that testimony conflicted with Attorney Smith's other clients. *Id*. The longer the concurrent conflict persists the more likely this litigation will ultimately result in a mistrial, further impacting Plaintiffs' right to relief. For these reasons, and as recognized by this Court's precedent, Plaintiffs have a right to ensure this matter is fully and fairly prosecuted, which necessarily requires a resolution to Defendants' concurrent conflict of interests.

     Plaintiffs' ability to challenge and scrutinize the Ethics Opinion and Waivers is also necessary for the Court to reach an informed decision whether to partially disqualify Attorney Smith from joint representation. "A presumptive right to counsel of one's choice has been recognized as arising out of the Sixth Amendment.' However, this presumption is only that, and may be overcome 'not only by a demonstration of actual conflict but by a showing of serious potential for conflict.' Determining whether such a conflict exists under this standard 'must be left primarily to the informed judgment of the trial court.' However, as noted by the Third Circuit, this 'is no simple task . . . [t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *U.S. v. Luchko*, Criminal Action No. 06-319, at *6 (E.D. Pa. Nov. 9, 2006) (citations omitted).

     Here, Your Honor is tasked with evaluating any actual or potential conflicts arising from Defendants' joint representation. The Court has Ordered an evidentiary hearing to scrutinize the Ethics Opinion and Waivers obtained by Tripp and Rocks. The Court will be limited in reviewing the completeness and validity of the Waivers if Plaintiffs are precluded from cross-examining ethics counsel as to the findings that form the basis of his Opinion.

---

[1] Copies of the relevant opinions cited have been enclosed herewith for the Court's review.

**BOCHETTO & LENTZ, P.C.**
The Honorable Joel H. Slomsky
September 24, 2024
Page **3** of **3**

      Attorney Smith cites to the attorney client privilege as a basis to preclude production of the Ethics Opinion and Waivers. This argument is misplaced. "A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 864 (3d Cir. 1994) (ultimately determining that "Because some documents may contain both discoverable and privileged information it would be appropriate, if not too burdensome, to redact them accordingly.") Here, the Ethics Opinion and Waivers are necessarily based on the Defendants' knowledge and informed waiver of actual and potential conflicts arising from their joint representation. Defendants' knowledge is directly at issue and is not protected by the attorney client privilege. Therefore, to the extent necessary, the Ethics Opinion should be redacted so as to maintain attorney client privilege while disclosing the facts and knowledge that make the basis of Defendants' informed consent.

      Accordingly, Plaintiffs' respectfully request that this Court issue an Order scheduling the evidentiary hearing and production of the Ethics Opinion and Waivers.

                                          Respectfully submitted,

                                          **BOCHETTO & LENTZ, P.C.**

                    By:    */s/ George Bochetto*
                             George Bochetto, Esquire

GB:mt
Enclosure

cc:    David Smith, Esquire (Via Court's ECF System)
       Benjamin T. Jackal, Esquire (Via Court's ECF System)



# U.S. v. Luchko

United States District Court, E.D. Pennsylvania   Nov 9, 2006

Criminal Action No. 06-319 (E.D. Pa. Nov. 9, 2006)

Criminal Action No. 06-319.

November 9, 2006

## Memorandum and Order

WILLIAM YOHN JR., District Judge

The United States moved for a hearing regarding possible conflicts of interest in the representation of defendants Leonard P. Luchko and Mark C. Eister ("defendants"). After considering the government's motion, the defendants' responses in opposition thereto, and the government's reply, the court held a hearing on October 12, 2006 to determine the extent of any actual or potential conflicts of interest that could serve as a basis for disqualifying one or both of the defendants' attorneys, and to colloquy the defendants as to a waiver of any such conflict. For the reasons stated herein, the court finds that any actual or potential conflict has been sufficiently waived by each defendant and the court will not disqualify either defendant's attorney based on a conflict of interest.

## I. Background

Defendants were indicted for conspiracy to obstruct justice and substantive counts of obstruction of justice, arising out of their employment with the State Senate of Pennsylvania ("Senate"). James C. Schwartzman, Esq., of Stevens Lee., P.C., represents defendant Luchko; *2 Brian J. McMonagle, Esq., of McMonagle, Perri McHugh, represents defendant Eister. Both parties agree that while the defendants were employees of the Senate of Pennsylvania, the Senate paid for defendants' counsel. (Gov't's Mot. at 1; Luchko's Answer at 4, 28; Eister's Answer at 4.) The government contends, however, that this payment was in reality effectuated by the Senate Democratic Appropriations Committee, an entity controlled by the Senator who is the primary target of the overall investigation. (Gov't's Mot. at 1, 3.) The parties also disagree as to how the defendants chose their counsel. The government believes that Sprague and Sprague, counsel for the Senator, chose the attorneys for the defendants, all of whom then entered into a joint defense agreement. ( *Id.* ) Defendant Luchko maintains that Schwartzman was suggested to him by other Senate employees, including individuals who work for the Senator. (Luchko's Answer at 4, 28.) McMonagle was first contacted by Mark Cedrone, Esq., a well-known member of the criminal bar, who stated he was recommending McMonagle to represent Eister. McMonagle was then contacted by someone from Sprague and Sprague, the law firm that represents the Senator, who recommended him to Eister. At the hearing, Eister explained that he then researched McMonagle's reputation using the internet.

Both attorneys Schwartzman and McMonagle warrant that their receipt of funds from the Senate satisfies the dictates of the Pennsylvania Rules of Professional Conduct, as adopted, Local Rule of Civil Procedure 83.6 and Local Rule of Criminal Procedure 1.2. In other words, they aver that payment of their legal fees by a third party would not interfere with either attorney's professional judgment. (Luchko's Answer at 6, 16; Eister's Answer at 5.) Both attorneys also stated that they discussed this matter with their respective clients. (Luchko's Answer at 6, 16; Eister's Answer at 5.) *3

After the defendants were indicted and promptly resigned from their employment with the Senate on May 31, 2006, the Senate ceased paying their legal bills. A legal defense trust fund ("trust") was created to pay the legal bills of the defendants. (Luchko's Answer at 6, 17; Def.'s Supp. Br. at 1.) The government believes the Senator may be engaged in the effort to create the trust and to raise money for the trust to pay the defendants' attorney fees. (Gov't's Mot. at 4; Gov't's Supp. Br. at 3-4.) At the hearing, Schwartzman revealed that this trust is administered by three independent trustees, J. Whyatt Mondesire, Robert Curran, Esq., and Rhonda Cohen, Esq., and that Ralph Teti, Esq., is counsel for the trust. Both defense attorneys averred that, to date, they have not accepted payment from the trust fund, and do not know how, or by whom, the trust was being funded. At the hearing, McMonagle, Eister's attorney, requested appointment as Eister's attorney pursuant to the Criminal Justice Act ("CJA"), as an alternative to payment by the trust fund, as Eister is not currently employed. He stated that with such appointment he would neither request nor accept any money from the trust. Since that time, the

court has appointed McMonagle as a CJA attorney. Schwartzman did not make a similar request, as he did not believe the legal defense fund posed an unwaivable conflict and because Luchko is currently employed so that it was not likely that he would qualify for a CJA attorney.

The government has also asserted two other sources of potential conflict related to Schwartzman: Schwartzman's concurrent representation of "Witness A" and the Senator's involvement with Schwartzman's law firm, Stevens Lee. In Luchko's answer, Schwartzman explained that at the time Luchko retained Schwartzman, Schwartzman also represented Witness A, a non-target fact witness in the investigation. (Luchko's Answer at 4.) Schwartzman determined that there would not be a conflict in representing both Luchko and Witness A; *4 discussed the matter with both clients; and informed Assistant United States Attorney John Pease of the dual representation, to which Pease agreed that "there was not even a remote possibility of any conflict." ( *Id.* at 5.) The government admits that it originally believed that Witness A had no relevant information regarding defendant Luchko but, based on an email that was not previously available and only recently provided to investigators by a cooperating witness, may now call Witness A as a witness at Luchko's trial. (Gov't's Reply at 6). That would place Schwartzman in the position of cross-examining a former client at the trial of another client. At the hearing, the government explained that calling Witness A was only a possibility. Schwartzman also let it be known that as soon as he learned of any potential for conflict based on that email, he advised Witness A to retain separate counsel, which Witness A has done. He affirmed that he has not received any confidential information from Witness A regarding the email at issue.

Second, the government posited that the Senator and the bank of which he is the chairman and the single largest shareholder are both clients of Stevens Lee, Schwartzman's law firm. ( *Id.* at 7.) Schwartzman explained that as far as he is aware, the Senator is not represented by Stevens Lee in his individual capacity. The law firm does, however, represent the bank of which the Senator is Chairman of the Board and a large shareholder; the Senator will stand to receive a large sum of money when the current proposed sale of this bank is completed.

The government has highlighted its particular concern that it may be in the best interest of defendants to cooperate, but such cooperation may be adverse to the Senator's interest. The government has informed attorneys for the defendants that it is interested in engaging in a proffer with either defendant or both. Both attorneys have maintained the request for their clients to *5 receive immunity or a guarantee of probation in return for cooperation, but the government has rejected that request, at least until after a proffer has been made by the individual defendants.

At the hearing on October 12, the court engaged in a colloquy with both defendants wherein they each knowingly, intelligently and voluntarily waived conflicts related to the Senate's payment of their legal fees during their employment with the Senate. Defendant Luchko also knowingly, intelligently and voluntarily waived any actual or potential conflict related to Stevens Lee's representation of the bank and the payment of Schwartzman's legal fees by the legal defense fund. Given the lack of specific information concerning the Senator's involvement with the legal defense fund, the court presented the matter to Luchko for waiver using hypothetical facts — that the Senator created the trust fund and is heavily involved in the trust fund by soliciting contributions for the fund or his friends are donors to the fund. The government did not object to the court's acceptance of all waivers, but believed the issue of the legal defense fund remained problematic. The court ordered both parties to file supplemental briefs on the issue of the legal defense fund and the propriety of such a fund in the instant matter.

## II. Standard

The Third Circuit has made clear that "[t]he Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Moscony,* 927 F.2d 742, 748 (3d Cir. 1991) (citations omitted). "However, another right is derived from the right to effective assistance of counsel, for the `the right to counsel being conceded, a defendant should be afforded a fair opportunity to *6 secure counsel of his own choice.'" *Moscony,* 927 F.2d at 748 (citing *Powell v. Alabama,* 287 U.S. 45, 53 (1932)). "Thus a presumptive right to counsel of one's choice has been recognized as arising out of the Sixth Amendment." *Moscony,* 927 F.2d at 748 (citing *Wheat v. United States,* 486 U.S. 153, 159 (1988)). However, this presumption is only that, and may be overcome "not only by a demonstration of actual conflict but by a showing of serious potential for conflict." *Wheat,* 486 U.S. at 164; *Moscony,* 927 F.2d at 750. Determining whether such a conflict exists under this standard "must be left primarily to the informed judgment of the trial court." *Wheat,* 486 U.S. at 164. However, as noted by the Third Circuit, this "is no simple task . . . [t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *United States v. Voight,* 89 F.3d 1050, 1076 n. 12 (3d Cir. 1996) (citing *Wheat,* 486 U.S. at 162-63).

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir. 1980). The Supreme Court has held, "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," thus the district court may even override a defendant's waiver of his attorney's conflict of interest. *Wheat,* 486 U.S. at 160. The Pennsylvania Rules of Professional Conduct, 204 Pa. Code § 81.4 ("RPC"), provide a guide for considering whether ethical standards have been maintained in a given situation. *See In Re Grand Jury Investigation,* 2006 U.S. Dist. LEXIS 57756, at *11 (E.D. Pa. May 16, 2006) (finding that the RPC provide

a useful template against which to measure the conduct of lawyers subject to a disqualification motion); *United States v. Stout,* 723 F. Supp. 297, *7 303 (E.D. Pa. 1989) (using RPC to determine ethical considerations governing disqualification motion). The Local Rules of Civil and Criminal Procedure for the Eastern District of Pennsylvania require attorneys practicing in the district to comply with the RPC. Local R. Civ. P. 83.6; Local R. Crim. P. 1.2. However, "[t]he disqualification of a defendant's chosen counsel need not be . . . predicated on a finding of a specific RPC violation." *Voight,* 89 F.3d at 1076 n. 12. "The district court has independent interests in protecting its judgments against later collateral attack, preserving the integrity of its proceedings, and protecting the truth-seeking function of the proceedings." *Id.* at 1076 (citations omitted). Therefore, a court must investigate allegations of possible impropriety surrounding the representation of defendants to determine whether there is any conflict of interest and whether, even if such a conflict is waived, the court is obligated to disqualify either defendant's attorney.

## III. Third Party Payment of Legal Fees

The Supreme Court has acknowledged "the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party . . . One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest." *Wood v. Ga.,* 450 U.S. 261, 268-269 (1981). The Court quoted with approval a state court case, stating "it is also inherently wrong for an attorney who represents only the employee to accept a promise to pay from one whose criminal liability may turn on the employee's testimony." *Id.* at 269 n. 15 (quoting *In re Abrams,* 266 A. 2d 275, 278 (N.J. 1970)); *see also, United States v. Chapman,* 1999 U.S. Dist. LEXIS 13675, at *9 (E.D. Pa. Sept. 8., 1999) *8 (disqualifying defendant's attorney after finding that the attorney "would be placed in the position of counselling [sic] a potential witness to provide evidence adverse to the person who is the source of the money used to pay his professional fee").

RPC 1.7 and 1.8 are the relevant ethical rules for ascertaining whether the lawyer has a conflict based on his relationship with a third party. RPC 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, *a former client or a third person or by a personal interest of the lawyer.*
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent.

§ 81.4 (Rule 1.7) (emphasis added). However, RPC comments make clear: "In some cases, the risk may be so severe that the conflict may not be cured by client consent." § 81.4 (Rule 1.10, cmt. 6). Rule 1.8(f) deals more directly with the situation where a lawyer receives payment for representing one client from a third party:

> (f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> (1) the client gives informed consent;
>
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
>
> *9
>
> (3) information relating to representation of a client is protected as required by Rule 1.6.[1]
>
>> [1] Rule 1.6 concerns duty of confidentiality of information and exceptions thereto.

§ 81.4 Rule 1.8(f). The comments to Rule 1.8 state:

> Because third-party payers frequently have interests that differ from those of the client, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing, lawyers are prohibited from accepting or continuing such representations unless the lawyer determines that there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client.

§ 81.4 (Rule 1.8, cmt. 11).

## A. Senate's Payment of Defendants' Legal Fees

Luchko asserts that the "Senate has a long standing policy of paying for its employees to retain the counsel of their choice to represent the employees in matters arising from performance of the employee's job" (Luchko's Answer at 13) and, moreover, that this practice is commonplace across the United States ( *Id.* (citing *United States v. Stein,* 435 F. Supp. 2d 330, 335 (S.D.N.Y. 2006).) Counsel for both defendants have affirmed in their papers and before the court that their representation meets the dictates of RPC 1.6, 1.7 and 1.8. (Luchko's Answer at 13; Eister's Answer at 5.) Both defendants have knowingly, intelligently and voluntarily waived any actual or potential conflict relating to this time period. Given that it is the standard practice of the Pennsylvania Senate to pay the legal bills of all of its employees when they are under investigation for actions arising out of their employment, even if the Senator had to approve or initiate payments via his role as Chair of the Democratic Appropriations Committee, the court finds that there is no actual or potential conflict of interest with regard to the standard procedures *10 and, to the extent there is, the waivers of both Luchko and Eister are sufficient to overcome any actual or potential conflict, and are accepted.

## B. The Payment of Defendant Luchko's Legal Fees by the Legal Defense Fund

At this time, a legal defense trust fund has been established to pay the legal fees of defendants Luchko and Eister. As Eister's attorney has been appointed as a CJA attorney whose fees will be paid by the federal government for his representation after May 31, 2005, any conflict stemming from the legal defense fund is moot in regard to Eister. The government believes the legal defense fund's payment of fees for Luchko is akin to the direct payment of legal fees by a third party whose interests are adverse to the beneficiary of those payments. (Gov't's Supp. Br. at 3.) In other words, the establishment of a trust fund does not change the calculus. ( *Id.*) Schwartzman contends that any acceptance of fees from the trust will satisfy the dictates of Rule 1.8(f). (Def's Supp. Br. at 3.) Further, the Senator would not be the person authorizing payments, but rather it would be the independent trustees who have a fiduciary duty to Luchko as beneficiary of the trust. ( *Id.* at 4.) Schwartzman also avers that he discussed all of the relevant issues with Luchko such that Luchko could make an informed determination as to whether he would permit the legal defense fund to pay any portion of his legal fees. ( *Id.*) Specifically, Schwartzman states:

> Luchko has a fee agreement obligating Luchko (and Luchko alone) to pay fees incurred in the defense of the instant matter. However, Schwartzman has discussed with Luchko the relevant factors necessary for Luchko to make an informed determination regarding whether Luchko wants to authorize the trust fund to pay any portion of his legal fees. Specifically, [Schwartzman] explained (i) the trust fund would not exercise any control or influence over the representation, (ii) Schwartzman would not accept any fees from the fund if payment is conditioned on Luchko or Schwartzman taking any certain position in Luchko's defense, and (iii) Schwartzman has no duty of loyalty to the trust fund, the trustees or any contributors to or promoters *11 of the fund (the identities of whom, if any exist, are at this point unknown to Schwartzman). Instead Schwartzman has undivided loyalty to Luchko.

( *Id.* at 5)

As it would be naive to believe the Senator has had no involvement in setting up or soliciting contributions to the trust, and since he is a possible co-defendant in this case, there is an actual conflict of interest should Schwartzman accept payment of legal fees from the trust fund. However, the court finds that Schwartzman has diligently adhered to the dictates of the RPC in dealing with this matter and has done everything to satisfy his ethical obligations up to this point. *Cf. Moscony,* 927 F.2d at 742 ("When a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform to with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant."). Moreover, the court is confident that Schwartzman will not permit an interference of his professional judgment or with the attorney-client relationship in the future, and will not receive fees from the legal defense fund should the receipt of such funds cause him to violate any RPC, notably Rule 18(f). Specifically, I find that Schwartzman has and will continue zealously to respect his client's interests and give unbiased advice regarding the benefits of cooperating against other potential defendants regardless of the source of his payments. In short, payment from the trust will not adversely effect his performance.

Additionally, the court engaged in a lengthy colloquy with Luchko wherein Luchko knowingly, intelligently and voluntarily waived any potential conflict relating to this legal defense fund, even assuming the Senator has created the trust fund and is heavily involved in securing payments for it. The court also notes that the government is satisfied with Schwartzman's representations and Luchko's waiver, and does not oppose the court's exercise of *12 its discretion in accepting Luchko's waiver. (Gov't's Supp. Br. at 10.) Thus, the court finds that Luchko has given his informed consent and the court will accept Luchko's knowing, intelligent and voluntary waiver and will not disqualify Schwartzman.

## IV. Schwartzman's Representation of Witness A

Schwartzman represents Witness A, whom the government now says it may call as a witness at defendant Luchko's trial. The comments to Rule 1.7 state: "[A] directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit." § 81.4 (Rule 1.7, cmt. 6). A similar situation was the subject of *United States v. Wheat,* 486 U.S. 153 (1988), where the Supreme Court held that the

defendant was not entitled to counsel of his choice where that attorney also represented a witness the government intended to call at trial. *Wheat,* 486 U.S. at 164. The attorney, because of his prior representation of the witness, "would have been unable ethically to provide that cross examination," even in the face of a waiver by all relevant parties. *Id.*

The Third Circuit has likewise proscribed such a situation, stating that "[c]onflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *Moscony,* 927 F.2d at 750. The court in that case went on to hold that the district court had properly disqualified the defendant's trial counsel, finding that the attorney could have used information learned from former clients to cross-examine and impeach them at trial. *Id.* A similar situation arose in *Voight* where the attorney had represented two clients for the purposes of responding to grand jury subpoenas, *13 before he represented the defendant. *Voight,* 89 F.3d at 1078. One of those former clients was likely to testify at the defendant's trial thus, "there was a strong possibility that [the former client] might face cross examination by a former attorney [and] there was a serious potential for a conflict of interest, which . . . warranted disqualification." *Id.*

On the other hand, the court found a distinguishable situation in *United States v. Hawkins,* U.S. Dist. LEXIS 17732 (E.D. Pa. Aug. 26, 2004). In that case, the government moved to disqualify the defendant's counsel on the ground that the attorney had previously represented the defendant's secretary when she was called before the grand jury and now the government planned to call the secretary at trial. *Hawkins,* U.S. Dist. LEXIS 17732, at **3-6. The court declined to disqualify the attorney, finding that the secretary's testimony was peripheral and the government did not assert that it was relying on it "completely or even substantially" to prove the falsity of the defendant's testimony. *Id.* at *19. The court additionally found two other considerations supporting its decision not to disqualify. First, the secretary did not join in the motion to disqualify, but had waived any conflict, thereby counseling against disqualification because "courts should be hesitant to grant a motion to disqualify defense counsel when the witness, whose interests the government is supposedly protecting, does not demand disqualification in order to protect those interests." *Id.* at **22-23 (citations omitted). And second, co-counsel who had not previously represented the secretary would cross-examine her at trial, rather than the attorney who had formerly represented her. *Id.*

At this time, the government represents that calling Witness A at Luchko's trial is only a possibility and testimony would regard a matter unrelated to Schwartzman's representation of Witness A. The government now asserts that this matter should be deferred pending future *14 developments to determine whether Witness A will be called to testify and, if so, as to what issues. Witness A has retained new counsel and Schwartzman has certified that he has not obtained any confidential information from Witness A that relates to his representation of Luchko. Schwartzman, Witness A and Luchko are all aware of the contents of the email in question and see no connection between that email and Schwartzman's representation of Witness A. Therefore, the court finds the situation to be akin to that in *Hawkins* because the government has not yet determined with any certainty whether it will call Witness A, the testimony appears to be peripheral, Schwartzman has not obtained confidential information that would compromise a cross-examination of Witness A, and Witness A has retained alternate counsel. Thus, the court does not find a conflict warranting disqualification at this time. Should the government decide to call Witness A at Luchko's trial and should his testimony present a conflict, the court may revisit this matter.

## V. Stevens Lee's Representation of the Senator

The imputation of conflicts of interest to lawyers in a law firm is governed by RPC 1.10. In relevant part:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, or 1.9 . . .
>
> . . .
>
> (d) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

§ 81.4 (Rule 1.10). The comments further illuminate the rule stating, "The rule in paragraph (a) does not prohibit representation where neither questions of client loyalty nor protection of confidential information are presented." § 81.4 (Rule 1.10, cmt. 3). Further, "the law firm may *15 not represent a person with interests adverse to those of a present client of the firm, which would violate rule 1.7." § 81.4 (Rule 1.10, cmt. 5).

Schwartzman joined the firm of Stevens Lee in 2005. The firm has more than 180 attorneys. Schwartzman asserted that the firm's representation of the Senator is limited to its representation of the bank of which he is the chairman and largest shareholder and it does not represent the Senator in his individual capacity. Schwartzman himself has no involvement with the firm's representation of the bank. Further, once the sale of the bank takes place, there will be no relationship between Stevens Lee and the Senator. The court engaged in a colloquy with Luchko regarding any potential for conflict based on the firm's representation of the bank, and Luchko knowingly, intelligently and voluntarily waived any conflict. The government agrees that the waiver is sufficient to waive any possible conflicts of interest on this issue. The court accepts this waiver and will not disqualify Schwartzman.

## VI. Conclusion

While cognizant that "[c]onflicts of interest arise whenever an attorney's loyalties are divided," *see Moscony,* 927 F.2d at 750, the court does not find any actual or potential conflict that overcomes the presumption that a defendant is entitled to counsel of his choice, as to either defendant Luchko or Eister. If, however, at any time in the future, defendant Luchko himself feels he is not receiving the independent professional judgment of his attorney or that it has been interfered with, or that he himself cannot act independently, he may petition the court for a change of counsel. An appropriate order follows. *16

## ORDER

**AND NOW,** this day of November, 2006, upon consideration of the government's motion for hearing regarding possible conflicts of interest (Document No. 21), the defendants' responses, the hearing held on October 12, 2006 and the supplemental briefs by the parties thereafter, **IT IS HEREBY ORDERED** that:

1. The government's motion for a hearing is **GRANTED,** the hearing having been held on October 12, 2006.

2. There is no actual or potential conflict of interest with reference to the payment of defendants' legal fees by the Pennsylvania Senate in accordance with its standard practice during the time that defendants were employed by that body and, to the extent that there is any such conflict, both defendant Luchko and defendant Eister have knowingly, intelligently and voluntarily waived the same, which waiver the court accepts.

3. Counsel for defendant Eister, Brian J. McMonagle, has been or will be paid by the federal government as a CJA lawyer for the time that he has represented defendant Eister since the termination of Eister's employment by the Pennsylvania Senate so that there is no actual or potential conflict of interest with reference to McMonagle's representation of defendant *17 Eister and, to the extent there is, defendant Eister has knowingly, intelligently and voluntarily waived any such conflict, which waiver the court accepts.

4. The payment of Luchko's legal fees by the legal defense trust fund constitutes an actual conflict of interest. However, the court finds that defendant Luchko has knowingly, intelligently and voluntarily waived any actual or potential conflict of interest on the basis that the Senator (a potential co-defendant) is or may be substantially involved in establishing the trust fund and soliciting payments to the trust fund, which waiver the court accepts. The court further finds that Luchko's counsel, James C. Schwartzman, Esq. has not and will not allow any interference with his independent professional judgment or the client-lawyer relationship in representing his client.

5. The prior representation of Witness A and prior and current representation of Luchko by Schwartzman does not constitute an actual conflict of interest. It does represent a potential conflict of interest; however, the court will await further developments with reference to whether that potential conflict arises and the extent of such potential conflict, if it does arise.

6. The representation of a bank in which the Senator has a substantial financial interest by Stevens Lee represents a potential conflict of interest; however, there are no issues relating to the protection of confidential information and to the extent that there are any questions of client loyalty, Luchko has knowingly, intelligently and voluntarily waived any such conflict, which waiver this court accepts.

7. This order is without prejudice to the right of defendant Luchko to petition the court pro *se* for a change of counsel if at any time he feels that he is not getting independent professional advice from Schwartzman or that it is being interfered with, or that Luchko feels that he himself cannot act independently from any other defendant or potential defendant as a *18 result of any of the circumstances set forth hereinabove.

1   *1

About us

Jobs

Blog

Twitter

Facebook

LinkedIn

Instagram

Help articles

Customer support

Contact sales

Schedule training

Cookie Settings

Do Not Sell or Share My Personal Information/Limit the Use of My Sensitive Personal Information

https://casetext.com/case/us-v-luchko?ssr=false                                                                                           6/7

Privacy

Terms

© 2024 Casetext Inc.

Casetext, Inc. and Casetext are not a law firm and do not provide legal advice.



# U.S. v. Borgesi

United States District Court, E.D. Pennsylvania    Oct 11, 2000

Criminal Action No. 99-0363-07 (E.D. Pa. Oct. 11, 2000)

Criminal Action No. 99-0363-07

October 11, 2000

## MEMORANDUM AND ORDER

HUTTON, Judge.

Presently before this Court are Government's Motion to Disqualify Morris W. Pinsky, Esq. from the Representation of George Borgesi or Any Other Defendant Based Upon Unwaivable Conflict of Interest (Docket No. 299), Morris W. Pinsky's Response to Government's Motion to Disqualify Him From the Representation of George Borgesi (Docket No. 317), Government's Reply to Morris W. Pinsky's Response to Government's Motion to Disqualify Him From Representation of George Borgesi or Any Other Defendant Based Upon Unwaivable Conflict of Interest (Docket No. 321) and hearing held October 4, 2000.

## I. INTRODUCTION

In this Motion, the United States of America seeks the disqualification of Morris W. Pinsky, Esq. ("Pinsky") from the representation of George Borgesi ("Borgesi") or any other defendant in this case because of his numerous and multi-faceted conflicts of interest. Pinsky opposes this Motion and denies he has any unwaivable real or potential conflict of interest.

## II. DISCUSSION

The Sixth Amendment to the Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. *See Wheat v. United States*, 486 U.S. 153, 158 (1988); *United States v. Voigt*, 89 F.3d 1050, 1074 (3rd Cir. 1999); *United States v. Dolan*, 570 F.2d 1177, 1180 (3rd Cir. 1978). The purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial and that in evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer. *See Wheat*, 486 U.S. at 159. Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. *See id*. Thus, the right to counsel is not absolute. *See id*.

A court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether conflicts warrant separate counsel. *See Wheat*, 486 U.S. at 160. Courts have recognized this concern as a basis to circumscribe the Sixth Amendment right to choose one's own counsel. *See id*.; *United States v. Stewart*, 185 F.3d 112, 122 (3rd Cir. 1999) (affirming disqualification of counsel based on conflict of interest); *Voigt*, 89 F.3d at 1073-80 (same). Furthermore, it is immaterial that the conflict be actual or potential. *See United States v. Voigt*, 89 F.3d 1050, 1075. Upon showing of serious potential for conflict, a presumption in favor of a defendant's counsel of choice is overcome and the district court may disqualify counsel. *See Wheat*, 486 U.S. at 164; *United States v. Moscony*, 927 F.2d 742, 749-50 (3rd Cir. 1991). One such situation where a conflict arises is where a lawyer contacts a person implicated as a coconspirator with his own client to persuade that person not to cooperate with authorities. *See United States v. Grieg*, 967 F.2d 1018, 1020-21 (5th Cir. 1992). Here, a potential conflict of interest, which requires the Court to disqualify Pinsky, involves his contact with Gaetano Scafidi ("Scafidi"). Since 1994, Scafidi has been imprisoned. *See* Government's Reply Brief at 15. He is serving a federal prison sentence for RICO and Hobbs Act extortion. Scafidi has admitted that he is a "made" member of the Philadelphia La Cosa Nostra family and that he has committed many crimes in furtherance of the conduct of the affairs of the criminal enterprise. He has also advised that he and Borgesi were long time associates of the organization. *See id*. at 15-16.

As a mob war flared in 1993 between the Natale/Merlino faction and the faction loyal to the then boss John Stanfa, Scafidi became concerned that members of the Natale/Merlino faction, to which he belonged, did not trust him and were preparing to kill him. Accordingly, he defected to the Stanfa side. After this defection Scafidi survived several attempts to kill him before he was arrested and imprisoned.

As Scafidi was drawing near the completion of his sentence in early 2000, he concluded that he was still likely to be killed by the residue of the Merlino faction that was still on the street. This residue included his former friend Borgesi. Scafidi then informed the government that he was interested in cooperating. Accordingly, he was transported via writ to testify before the federal grand jury sitting in the district. This resulted in his being moved from FCI Schuylkill to the Bucks County Prison.

Mr. Pinsky went to the Bucks County Prison to see Scafidi. Pinsky's actions in visiting Scafidi at the Bucks County Prison were done without requesting or receiving permission from Scafidi's lawyer, Christopher G. Furlong, Esq. According to Scafidi, Pinsky visited him and assured him that Borgesi held no animosity toward him and it would be safe for him to return home. *See id*. at 18. Pinsky also gave a letter from Borgesi, allowed him to read it and then took it back. See government's Motion to Disqualify Morris W. Pinsky, Esq., exhibit F. Pinsky also offered him $100 from Borgesi, which he refused. This contact raises the potential conflict of interest because Pinsky's conduct suggests that Pinsky tried to influence either Scafidi's testimony before the grand jury or Scafidi's decision to cooperate with the federal authorities.

Another potential conflict arises whenever an attorney's loyalties are divided. *See Moscony*, 927 F.2d at 710. Here, Pinsky's loyalties are divided between Ralph Natale ("Natale"), an individual Pinsky represented in conjunction with a 1973 murder and his present client Borgesi. At oral argument, Pinsky asserted that he "did not represent Natale relative to the McGreal homicide" in 1973. *See* Record at 12. Contrary to Pinsky's assertion that he represented the union, rather than Natale, a police report of the investigation of McGreal's murder noted that the police interview of Natale took place at Pinsky's law office, in his presence and the primary focus of the interview of Natale was McGreal's murder. *See* Government's Motion to Disqualify Morris W. Pinsky, exhibit A. Thus, the Court concludes that Pinsky had represented Natale at that police interview as a possible criminal defendant. Pinsky's access to privileged information is conclusively presumed. *See United States v. Provenzano*, 620 F.2d 985, 1005 (3rd Cir. 1980).

In conjunction with his May 2000 guilty plea to RICO Conspiracy, Natale admitted that he committed the 1973 murder of McGreal. *See* Government's Reply at 6. As a cooperating government witness, if Natale is called as a witness, Pinsky would be under a duty to cross examine Natale. Natale has indicated he has not waived his attorney-client privilege relating to past representation by Pinsky. *See* Government's Motion to Disqualify Morris W. Pinsky, at 15. These facts demonstrate a potential conflict between Pinsky's duty to keep his former client Natale's confidences and his duty to his current client, Borgesi, to vigorously cross examine Natale. In that event, an attorney who cross examines a former client inherently encounters divided loyalties. *See Moscony*, 927 F.2d at 750. Accordingly, Pinsky must be disqualified based on this conflict of interest.

In spite of any actual or potential conflict, Pinsky has asserted that his client would waive any conflict of interest. *See* Record at 24, 44. The Court notes, however, that it may decline a proffer of waiver by the defendant. *See Wheat*, 486 U.S. at 163. The United States Supreme Court has stated that the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses. *See id*. A waiver does not resolve the conflict of interest because the district court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver. *See Moscony*, 927 F.2d at 749. This is true even if the conflict is potential. *See id*. at 750.

Thus, despite Pinsky's proffer that his client would waive any conflict of interest, the Court concludes that because the potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses, the waiver is rejected.

## III. CONCLUSION

The Court thus concludes that Morris W. Pinsky must be disqualified from representing George Borgesi or any other defendant based on an unwaivable conflict of interest.

An appropriate Order follows.

## ORDER

AND NOW, this 11th day of October, 2000, upon consideration of Government's Motion to Disqualify Morris W. Pinsky, Esq. from the Representation of George Borgesi or Any Other Defendant Based Upon Unwaivable Conflict of Interest (Docket No. 298), Morris W. Pinsky's Response to Government's Motion to Disqualify Him As Counsel for Defendant George Borgesi (Docket No. 313), Government's Reply to Morris W. Pinsky's

Response to Government's Motion to Disqualify Him From Representation of George Borgesi or Any Other Defendant Based Upon Unwaivable Conflict of Interest (Docket No. 322) and the arguments of counsel held at a hearing on October 4, 2000, IT IS HEREBY ORDERED that said Motion is **GRANTED**.

About us

Jobs

Blog

Twitter

Facebook

LinkedIn

Instagram

Help articles

Customer support

Contact sales

Schedule training

Cookie Settings

Do Not Sell or Share My Personal Information/Limit the Use of My Sensitive Personal Information

Privacy

Terms

© 2024 Casetext Inc.

Casetext, Inc. and Casetext are not a law firm and do not provide legal advice.

https://casetext.com/case/us-v-borgesi?ssr=false 3/3