IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH BOLOGNA and<br>DIANA BOLOGNA,<br><br>          Plaintiffs,<br><br>  v.<br><br>LAWRENCE KRASNER,<br><br>and<br><br>TRACY TRIPP,<br><br>and<br><br>SGT. GERALD ROCKS,<br><br>and<br><br>THE CITY OF PHILADELPHIA,<br><br>          Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: Case No. 2:24-cv-03185-JHS<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANTS LAWRENCE KRASNER, TRACY TRIPP, AND
SGT. GERALD ROCKS'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) [ECF 41]**

Defendants Lawrence Krasner, Tracy Tripp, and Sgt. Gerald Rocks (collectively referred to as the "**DAO Defendants**"), by and through their undersigned counsel, submit this Reply Memorandum of Law in Support of their Motion to Dismiss with prejudice the complaint of Plaintiffs Joseph Bologna and Diana Bologna (collectively referred to as "**Plaintiffs**") as to the DAO Defendants.

1

I. **LEGAL ARGUMENT**

A. **Mr. Bologna's False Arrest Claim is Time-Barred**

Plaintiffs' argument that Mr. Bologna's Section 1983 malicious prosecution and Section 1983 false arrest claims are timely misunderstands the DAO Defendants' argument and, similarly, misinterprets the case law cited. The DAO Defendants' decision not to assert that Mr. Bologna's malicious prosecution claim is time-barred was purposeful, given that it was brought within the applicable statute of limitations following Mr. Bologna's acquittal in February 2024. *See*, *DiBella v. Borough of Beachwood,* 407 F.3d 599, 601 (3d Cir. 2005). However, the allegations in Plaintiffs' Complaint seemingly assert both a claim for malicious prosecution and a claim for false arrest. *See,* Mot. To Dismiss Ex. A [ECF 41-3] at ¶¶ 431-452. It is Mr. Bologna's Section 1983 claim for false arrest that is stale, as it was brought outside of the relevant statute of limitations, which statute was not tolled by virtue of Mr. Bologna's distinct malicious prosecution claim and subsequent acquittal.

Plaintiffs rely upon *McDonough v. Smith,* 588 U.S. 109 (2019) in support of their argument that the statute of limitations period for both Mr. Bologna's Section 1983 malicious prosecution claim and Section 1983 false arrest claim only began to run upon Mr. Bologna's acquittal in February 2024. Plaintiffs' reliance is misplaced. Unlike the present case, *McDonough* did not include a distinct claim for false arrest. Instead, Mr. Bologna is attempting to shoehorn his separate and untimely false arrest claim by bootstrapping it to his malicious prosecution claim. This is improper. Indeed, the Supreme Court in *McDonough* looked to the seminal case of *Wallace v. Kato*, 549 U.S. 384 (2007) to assist its analysis and reaffirmed that *Wallace* held that the "limitations period begins to run on a Section 1983 claim alleging an unlawful arrest under the Fourth Amendment as soon as the arrestee 'becomes detained pursuant to the legal process,' not

2

when he is ultimately released." *McDonough*, 588 U.S. at 121-22 (quoting *Wallace*, 549 U.S. at 397). The Supreme Court in *Wallace* further explained that "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution…if there is a false arrest claim, damages for that claim cover the time of detention up until issuance or process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than the detention itself." *Wallace*, 549 U.S. at 389-90 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 11, p. 54, § 119, pp. 885–886 (5th ed.1984)). "We hold that the statute of limitations upon a Section 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to the legal process." *Id.* at 397. Here, Mr. Bologna sets forth two distinct claims for malicious prosecution and false arrest. Mr. Bologna's Section 1983 false arrest claim is stale as it necessarily had to be filed by January 15, 2023, at the latest. Accordingly, Mr. Bologna's Section 1983 false arrest claim must be dismissed with prejudice as to the DAO Defendants.

### B. Mr. Bologna's Section 1983 Claim for Established Policies, Practices, and Customs (*Monell*) is Time-Barred

Plaintiffs' argument that Mr. Bologna's Section 1983 *Monell* claim is timely is similarly incorrect. Plaintiffs again contend, without citing to any relevant case law in support, that Mr. Bologna's claim for established policies, practices, and customs is inextricably linked to his malicious prosecution claim and, therefore, should only begin to accrue upon Mr. Bologna's acquittal in February 2024. Plaintiffs' mistaken stance ignores their own allegations in the Complaint and relevant case law.

#124846216v3

"*Monell* claims are also subject to a two-year statute of limitations." *Jones v. Gansky*, 2023 WL6881050 at *5 (E.D.Pa. Oct. 17, 2023). Importantly, a court looks at the allegations relating to the specific Section 1983 claim to ascertain the date on which the statute of limitations period begins to accrue. In *Jones*, the court was faced with several Section 1983 claims asserted by a prisoner based upon an alleged improper search and seizure conducted by multiple police officer defendants which ultimately led to the prisoner's conviction. *Id. generally*. The plaintiff in *Jones* asserted claims for both Section 1983 malicious prosecution and a Section 1983 *Monell* claim. *Id.* Despite their loose relation to one another, the court analyzed the timeliness of each claim separately and declined to relate the statute of limitations to one another. In doing so, the court noted that the plaintiff based his *Monell* claim upon those events that ultimately led to the alleged improper search and seizure in 2018 – more than five years before the plaintiff filed his complaint. *Id.* at *5. "All of the factual allegations supporting Jones's *Monell* claims took place on July 18, 2018, the day that the Defendants gained entrance to Jones's residence by making up a story about a dropped 911 call." *Id.* The court ultimately determined that July 18, 2018, was the date on which the plaintiff's *Monell* claim began to accrue and, therefore, his *Monell* claim, having been filed more than five years later, was barred by the statute of limitations.

This case is similar. Here, Mr. Bologna has asserted claims for both Section 1983 malicious prosecution and Section 1983 established policies, practices, and customs. Despite their loose relation, the relevant statute of limitations period for the Section 1983 established policies, practices, and customs claim is not dependent upon the accrual date for the Section 1983 malicious prosecution claim. Instead, as in *Jones*, this Court should look to the allegations establishing Mr. Bologna's *Monell* claim separate and apart from the Section 1983 malicious prosecution claim. By Plaintiffs' own allegations, the alleged "well-settled" policies, procedures, customs and/or

4

practices were the moving force behind the alleged corrupt pre-probable cause investigation, which necessarily pre-dated Mr. Bologna's decision to voluntarily turn himself in, his arrest, and ultimate prosecution. *See*, Mot. to Dismiss Ex. A [ECF 41-3] at ¶¶ 465, 468. Accordingly, Mr. Bologna's *Monell* claim began to accrue upon his arrest or, at the latest, upon his attendance at his preliminary hearing on January 15, 2021. Because Plaintiffs' allegations supporting Mr. Bologna's Section 1983 *Monell* claim all occurred prior to Mr. Bologna's arrest and preliminary hearing, the Section 183 *Monell* claim is untimely as it was filed after January 15, 2023, and should be dismissed with prejudice as to the DAO Defendants.

### C. The DAO Defendants are Protected by Absolute Immunity

#### i. Sgt. Rocks is Protected by Absolute Immunity

Plaintiffs argue incorrectly that because Sgt. Rocks was employed by the City of Philadelphia as the Acting Chief of County Detectives, he is not a "prosecutor" and, therefore, not entitled to absolute immunity. Plaintiffs' argument neglects that Sgt. Rocks was acting in a prosecutorial support capacity at the direction of the District Attorney's Office, thereby availing himself of absolute immunity.

Plaintiffs' allegations in the Complaint demonstrate that Sgt. Rocks was part of District Attorney Krasner's support staff at the District Attorney's office and was, therefore, performing a quasi-judicial function in assisting District Attorney Krasner and Ms. Tripp prepare the affidavit of probable cause and charges. Plaintiffs allege, among other things, that District Attorney Krasner and Ms. Tripp "directed" Sgt. Rocks with respect to the affidavit of probable cause, as well as the pre-prosecution interview with Mr. Gorski to determine the extent of the charges being brought against Mr. Bologna. *See*, Complaint [ECF 1] at ¶¶ 223, 262, 282, 285, 311. Indeed, this is precisely because Sgt. Rocks was a member of District Attorney Krasner's support staff and

assisted the District Attorney's office with the prosecution of Mr. Bologna. Plaintiffs' allegations concede that Sgt. Rocks "answered directly to Krasner" and that "Krasner had personally selected Rocks for the position of Chief of County Detectives." *Id.* at ¶ 223. Plaintiffs' allegation is in line with 16 Pa. C.S.A. Section 4440 relating to the appointment, duties and compensation of county detectives. Relevantly, Section 4440 states:

> (a)    the district attorney may appoint one chief county detective, an assistant chief county detective, and as many county detectives, sergeant, special county detectives and junior county detectives as the salary board shall fix;
>
> (b)    county detectives shall at all times be subject to the orders of the district attorney…

16 Pa. Stat. Section 4440(a)(b). Therefore, by Plaintiffs' own allegations and the relevant Pennsylvania statutes, Sgt. Rocks, as Chief of County Detectives, was appointed by and subject to the orders and direction of District Attorney Krasner and the District Attorney's office. This made him a support staff member of the District Attorney's office for purposes of the actions allegedly taken by the DAO Defendants in furtherance of the prosecution and entitles him to protection from suit under absolute immunity. *See*, *Barzyk v. Marsico*, 2015 WL136622 at *1 (M.D.Pa. Jan. 8, 2015) (in dismissing complaint, court held that district attorney's office staff were similarly absolutely immune from suit).

### ii. District Attorney Krasner and Ms. Tripp are Protected by Absolute Immunity

Plaintiffs argue, more generally, that the DAO Defendants' actions are not protected from suit by absolute immunity because they do not involve the "performance of a prosecutorial function or an act committed as part of the judicial process." [ECF 42, pg. 10]. However, Plaintiffs ignore that this Circuit has previously held that interviews conducted by prosecutors to prepare for

6

grand jury testimony or filing of a complaint can be subject to absolute immunity. *See, Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989). The Court in *Rose*, in finding the prosecutor's alleged attempts to solicit perjury in investigatory interviews were protected by absolute immunity, stated, in relevant part, that "the mere invocation of the catch-word 'investigatory,' however, cannot suffice in this case to forestall dismissal on immunity grounds." 871 F.2d at 345. Moreover, the Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) stated "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom…." 424 U.S. at 341, n.33.

Here, the DAO Defendants are absolutely immune from suit because Plaintiffs base their claims on prosecutorial functions performed by the DAO Defendants that are intimately associated with the initiation of the judicial process against Mr. Bologna. The DAO Defendants' pre-probable cause interview, preparation of the affidavit of probable cause, and preparation of the criminal complaint are acts "intimately associated with the judicial phase of the criminal process." Accordingly, these actions must be protected from suit by absolute immunity and Plaintiffs' claims should be dismissed, with prejudice, as to the DAO Defendants.

### D. This Court May Properly Consider the DAO Defendants Qualified Immunity Argument

Plaintiffs next argue that "as a threshold matter, a qualified immunity defense is not properly asserted at the pleadings stage because its application necessarily requires the development of a full factual record and an intense factual analysis by the Court, which is not available at this juncture." [ECF 42, pg. 13]. This, however, is not an accurate portrayal of the law governing the application of the doctrine of qualified immunity.

Despite Plaintiffs' contentions, courts in this Circuit have held that while qualified immunity is a defense that can be appropriately raised as an affirmative defense in an answer, it

#124846216v3

can also be raised in a motion to dismiss at the pleading stage. *Eddy v. Virgin Islands Water and Power Auth.*, 256 F.3d 204, 201 n.3 (3d Cir. 2001); *Schneyder v. Smith*, 709 F.Supp.2d 368, 387 (E.D.Pa. 2010) (holding that defendant may raise qualified immunity on the pleadings in a motion to dismiss, on summary judgment, or as an affirmative defense at trial); *Handy v. Palmiero*, 2019 WL3973711 at *5 (E.D.Pa. Aug. 22, 2019); *Molina v. Little*, 2024 WL3548453 at *4 (W.D.Pa. July 26, 2024). Indeed, the Supreme Court has stressed the importance of resolving questions of immunity at the earliest possible stage in the litigation. *See, Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

Plaintiffs' stance that this Court should not consider the DAO Defendants' qualified immunity argument because it is inappropriate at this stage in the litigation is simply incorrect and an overstatement of the relevant case law. Accordingly, this Court may consider the DAO Defendants' argument that they are protected by qualified immunity for any conduct before the initiation of the judicial process. As set forth in the Motion, the DAO Defendants' alleged actions were discretionary functions of their jobs and Plaintiffs have failed to demonstrate that those actions amounted to violations of clearly established rights. As such, Mr. Bologna's Section 1983 claims should be dismissed with prejudice as to the DAO Defendants.

### E.  Mr. Bologna Fails to Set Forth a Claim for Malicious Prosecution

Plaintiffs' final argument is that the alleged conduct to which Mr. Bologna was subjected amounts to a "seizure" and, therefore, Mr. Bologna has properly pled the necessary elements for a Section 1983 malicious prosecution claim. In doing so, Plaintiffs rely heavily upon the case of *Black v. Montgomery*, 835 F.3d 358 (3d Cir. 2016) in support. *Black*, however, is readily distinguishable from this case.

#124846216v3

In *Black*, the Court was tasked with reviewing the district court's grant of the defendants' motion to dismiss and, specifically, addressing the plaintiff's contention that they were seized pursuant to the Fourth Amendment in furtherance of their malicious prosecution claim. *Id.* The plaintiff in *Black* was required to post unsecured bail of $50,000, which she was told would be forfeited if she did not attend all court proceedings. *Id.* at 367-68. Furthermore, the plaintiff in *Black*, while charged in Pennsylvania, lived in California and, as a result, was onerously required to travel at least twelve times from her home to Pennsylvania to attend pre-trial hearings. *Id.* at 368. The court noted that "it is significant that Black was required to fly from California to Pennsylvania for twelve pre-trial conferences in just a year 'to appear in court at the state's command.'" *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 278 (1994). Indeed, the court linked the analysis that Black's life was "presumably disrupted" to this onerous, cross-country travel. *Id.*

Here, the factual allegations paint a different picture of the supposed deprivations of liberty allegedly suffered by Mr. Bologna. Unlike *Black*, Mr. Bologna doesn't allege that he was required to post bail to be released from police custody. *See generally,* Mot. To Dismiss Ex. A [ECF 41-3, pg. 3]. Further, Mr. Bologna doesn't allege that his travel within or outside the Commonwealth was limited, that he was required to maintain contact with any pretrial services, or that he suffered any other onerous post-indictment deprivation of liberty. *Id.* Moreover, Plaintiffs admit that Mr. Bologna is a resident of Pennsylvania and, was not required to travel across the country to attend any pre-trial hearings similar to the plaintiff in *Black*. *Id.* Plaintiffs' allegations that he was generally required to attend court proceedings does not constitute a seizure for purposes of the Fourth Amendment. *DiBella v. Borough of Beachwood*, 407 F.3d 599 (3d Cir. 2005); *Basile v. Township of Smith,* 752 F.Supp.2d 643 (W.D.Pa. 2010). Even when viewed in the totality, Plaintiffs' allegations do not rise to the level sufficient to demonstrate Mr. Bologna was subject to

"onerous, non-custodial restrictions" and "post-indictment deprivations of liberty" sufficient to constitute a seizure. *See*, *Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir. 1998) (recognizing that the district court correctly cautioned that if the facts of the case amounted to a seizure, then nearly all individuals alleging malicious prosecution against public officials could proceed under Section 1983 because travel restrictions and required attendance at court hearings are present in most prosecutions). In sum, Mr. Bologna's Section 1983 malicious prosecution claim should be dismissed with prejudice as to the DAO Defendants.

## II. CONCLUSION

For the foregoing reasons set forth in this Reply and the DAO Defendants' Motion to Dismiss and Memorandum of Law [ECF 41], Mr. Bologna's Section 1983 claims should be dismissed with prejudice as to Defendants Lawrence Krasner, Tracy Tripp, and Sgt. Gerald Rocks. Furthermore, as Plaintiffs concede in their response to the DAO Defendants Motion to Dismiss [ECF 42], Mr. Bologna's intentional infliction of emotional distress claim and Mrs. Bologna's loss of consortium claim should be dismissed with prejudice as to Defendants Lawrence Krasner, Tracy Tripp, and Sgt. Gerald Rocks.

DATED: February 12, 2025

*/s/ David Smith*
David Smith (ID: 21480)
Theresa E. Loscalzo (ID: 52031)
Christopher Nana-Sinkam (ID: 320189)
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
*Counsel for Defendants Lawrence Krasner, Tracy Tripp, and Sgt. Gerald Rocks*

#124846216v3

## **CERTIFICATE OF SERVICE**

I, David Smith, hereby certify that on February 12, 2025, a true and correct copy of the foregoing DAO Defendants' Reply in Further Support of Motion to Dismiss Plaintiffs' Complaint was served upon all counsel of record via the Court's electronic filing system, as follows:

Gavin P. Lentz, Esq.
Kean C. Maynard, Esq.
George Bochetto, Esq.
BOCHETTO & LENTZ PC
1524 Locust Street
Philadelphia, PA 19102
*Counsel for Plaintiffs*

Benjamin T. Jackal, Esq.
CITY OF PHILADELPHIA LAW DEPARTMENT
Civil Rights Unit
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
*Counsel for Defendant, the City of Philadelphia*

DATED: February 12, 2025            */s/ David Smith*
                                    David Smith (ID: 21480)
                                    **DILWORTH PAXSON LLP**
                                    *Counsel for Defendants Lawrence Krasner,*
                                    *Tracy Tripp, and Sgt. Gerald Rocks*

#124846216v3